## Kiefaber's Estate.

*Spendthrift trusts—Annuities—Termination of trust at request of beneficiaries.*

A gift of annuities, coupled with a direction that the sums given shall be paid to the annuitants without "her or them" being liable for their "debts, contracts, engagements, alienations, anticipations, nor any liens, levies, attachments or sequestrations," is a good spendthrift trust, nothwithstanding the fact that no trustee is appointed, and the trust will not be terminated upon the application of the annuitants and residuary legatees under an agreement between them by which the fund set aside by the court to secure the payment of the annuities is to be distributed.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1921, No. 180.

The clause of the will under discussion is printed in full in the second paragraph of the opinion of the court *in banc* by President Judge Lamorelle.

The facts appear in the following extract from the opinion of the Auditing Judge:

GEST, J., Auditing Judge.—As concerns the annuity of $2000 to Elizabeth Eva Reiss. There are now presented to me an agreement executed by Elizabeth Eva Reiss and Orr S. Hubbard, dated April 2, 1921, hereto attached and marked Exhibit A, and a later agreement executed by the same, dated Sept. 9, 1922, and marked Exhibit B, by which in effect the said parties agreed, that the said sum of $66,000·should be paid to the five residuary legatees, who entered into an agreement to pay to said Elizabeth Eva Reiss and Orr S. Hubbard, according to the will and the arrangement of the five residuary legatees, the annuity of $2000. There was also produced to me another and further agreement executed by the five residuary legatees, dated Jan. 16,

Kiefaber's Estate.

1925, and hereto annexed, marked Exhibit C, by which, *inter alia*, it was agreed and provided that "The sum awarded by the Orphans' Court to care for the trust established in favor of Elizabeth Eva Reiss and Orr S. Hubbard is to be reduced and an agreement to that effect entered into with Elizabeth Eva Reiss and Orr S. Hubbard. The property No. 120 Produce Avenue is to be conveyed by the parties hereto to Elizabeth Eva Reiss or her nominee and the sum of $10,000 is to be forthwith invested in securities which, under the law, are legal investments and delivered to Elizabeth Eva Reiss or her nominee, and the sum of $9166.67, representing the income to which she is entitled by the terms of the will to date, shall be paid to Elizabeth Eva Reiss in cash."

There is also a copy or proposed draft of a release by Elizabeth Eva Reiss, releasing the five residuary legatees in consideration of their fulfillment of the above agreement. The question is whether the parties may legally make the agreement, inasmuch as the will provides, in connection with the annuity: "The above-named sums shall be paid to them without her or them being in any way liable for her or their debts, contracts, engagements, alienations and anticipations, nor any liens, levies, attachments or sequestrations." As stated by Mr. Beitler, the purpose of this agreement was to provide:

1. A payment in cash to Elizabeth Eva Reiss at the rate of $2000 per year, the sum provided in the will, to put her in the same position she would have been in if the paragraph of the will had been carried out to date.

2. A transfer of securities valued at $10,000, the income of which is $600, and a conveyance of real estate which produces $1500 a year (and which will increase in value) to place her in the same position she would have had in the future if this paragraph were to be followed.

Mr. Beitler, in behalf of all the parties interested, they being desirous to have their agreement carried out, argued that no trust, in the technical sense of the term, was created by the will, inasmuch as there is "no trust *res*," no terms of trust, no trustee was appointed and no duties imposed on a trustee, and, finally, that if there is a trust, it is invalid as to Orr S. Hubbard. But it was admitted that we have here the gift of an annuity or annual sum directed to be paid as stated in the will.

The omission of the testator to name a trustee is not vital, for, if the provisions of the will require any fiduciary duties to be performed, the court will always appoint a trustee: Varner's Appeal, 80 Pa. 140; Maus *v.* Maus, 80 Pa. 194; and here the direction is that the annuity be paid to Elizabeth Eva Reiss during her life. This means that it must be paid by some one in a fiduciary capacity: Ritter's Estate, 148 Pa. 577. An annuity, such as is given in this case, is a charge upon the entire residuary estate, and, strictly, the provisions of section 26 of the Fiduciaries Act apply, under which the residuary estate may be exonerated by setting apart a sufficient sum to secure the annuity, which remains in the possession, charge and management of the executors. In order to avoid circuity, delay and expense, it is the established practice of this court to set aside, at the audit of the executors' account, so much as is necessary to secure the annuity: Channon's Estate, 28 Dist. R. 479.

It may be true, as it is argued, that the provisions of the will are invalid as to Orr S. Hubbard, but it is sufficient to say that this question cannot arise until the death of Elizabeth Eva Reiss: Wears's Estate, 25 Dist. R. 30; Fabian's Estate, 18 Phila. 175; Hano's Estate, 8 Dist. R. 353. It is further argued that the annuity is not subject to a spendthrift trust so-called, as the will provides that "the above-named sums shall be paid to them without her or them being in any way liable for her or their debts, contracts, engagements,

alienations and anticipations, nor any liens, levies, attachments or seques-
trations." The distinction urged is that the testator, in saying "without her
or them being in any way liable for her or their debts," etc., used different
phraseology from that employed in subsequent paragraphs where the testator
used similar language exempting the income from debts. This would be a
very narrow interpretation. Of course, it would be absurd for a testator to
attempt to provide that his beneficiaries should not be personally liable for
their debts, etc., and such a provision would be meaningless and invalid in
law. Some reasonable meaning must, however, be given to this provision,
and that, in my opinion, is that the testator intended his beneficiaries should
be exempt from debts and contracts, etc., so far as regards the estate which
he has given to them. That is clearly what was in his mind, and my conclu-
sion is that the spendthrift trust provisions apply to the annuity, and, there-
fore, the agreement of the parties to substitute for the annuity some other
method of providing an income for the annuitant is invalid, Malatesta's
Estate, 29 Dist. R. 113, and there must, consequently, be awarded to the
executors, as trustees, the sum of $66,000 necessary to secure the annuity
according to the will.

*Robert F. Jackson* and *Harold B. Beitler*, for exceptions.

*Malcolm G. Campbell*, for accountants.

LAMORELLE, P. J., Oct. 22, 1926.—The question raised by exceptions requires
a determination of testator's meaning of Item 9th of his will. This item
reads thus:

"I will and bequeath unto Elizabeth Eva Reiss the sum of Two thousand
& no/100 Dollars to be paid to her annually in quarterly payments of (500$)
Five hundred and no/100 Dollars each on the first monday of January, April,
July and October of each Year during her life, at her decease it is my will
that this sum of (2000$) two thousand & 00/100 Dollars be paid in a like
manner to Orr C. Hubbard of Catawissa Columbia Co. Penna. His heirs
during their life. The above named sums shall be paid to them without Her
or them being in any way liable for Her or their debts, contracts, engage-
ments, alienations, and anticipations nor any liens, levies, attachments or
sequestrations."

Judge Gummey, who audited a previous account, directed that a fund of
$66,000 should be set aside and held by the executors in order to secure these
payments. At the audit of the subsequent account (that now before the
court) the parties in interest requested, among other things, that the fund be
distributed. They produced agreements and settlements—the validity of
which the Auditing Judge was to pass upon; their contention was, and is, that
no reason now exists for withholding this fund.

The Auditing Judge, following the ruling of Judge Gummey, and, in addi-
tion thereto, giving what, in our opinion, are good and sufficient reasons for
his own conclusions, directed that this sum should be retained for the pur-
poses as set forth in the item of the will above quoted.

Among the many objections to this ruling, exceptants stress the fact that
there is no "*res*," no trustee named, and that no active duties are required.

It is obvious, however, that in all cases of this character, there is a "*res*,"
to wit, usually the entire estate, after the payment of debts and costs of
administration, or, as in the instant case, a sum carved out of the estate,
which, in the opinion of the court, was deemed sufficient (Channon's Estate,
28 Dist. R. 479); that where the necessity exists, the court, following the
principles of equity, will appoint a trustee or some one to hold the fund

(Varner's Appeal, 80 Pa. 140) ; and that there are active duties imposed: the payment of sums certain at fixed periods; withholding same until the time of payment arrives, and so preventing creditors attaching, or the so-called annuitant from anticipating, which could not, nor would not, otherwise be effective: Ritter's Estate, 148 Pa. 577.

It is further contended with much earnestness that testator could not have intended to create a "spendthrift" trust by Item 9th, because in other clauses of his will he used apt words when such was his purpose. Remarking, incidentally, that his so-called "apt" words were futile, in that the trusts referred to have been declared by this court ineffective for other reasons, we may say, once for all, that no set phrases are necessary for the creation of a spendthrift trust; the purpose and intent of the testator is to be sought; and when the language used by him reasonably shows what was his desire, the courts are bound to so interpret. This may best be illustrated by what is said by the late Judge Penrose, in his adjudication in Jeitles's Estate (as of April Term, 1899, No. 149): "The will does not, in terms, create a trust; but it is a familiar principle that a trust may be implied, and that a testator's intention in this respect is to be gathered from the terms and provisions of the will. The mere fact that there is a gift of income for life, only to the sons, is not, of course, sufficient, standing by itself, to give rise to such an implication, since the interests taking effect at their deaths, respectively, may be protected by the entry of security under the acts of assembly; but here there is an express provision that the income shall not be liable for the debts of the sons, or be capable of assignment, &c., &c., and this can only be accomplished through the instrumentality of a trust. On this subject, see Bush v. Allen, 5 Mod. 63; South v. Allen, 5 Mod. 101, &c., &c., &c.

"It is quite clear from the provisions of the will that the testator intended the trust to be performed by the executors. The functions of an executor, qua executor, are usually ended at the expiration of a year or as soon after that time as in the ordinary course of dealing the estate can be settled; but here it is apparent that duties were contemplated on the part of the 'executors,' so-called, of indefinite duration."

In Jeitles's Estate, the income and interest was given to three sons in equal shares for life, with power of appointment, the issue of the sons to receive their shares if the power was not exercised. The income was not to be pledged, nor was it subject to execution or liability for debts, etc.

In the instant case, it is argued with vigor that a spendthrift trust cannot be superimposed upon a legal estate (which argument, however, would appear to be answered by Jeitles's Estate, supra), and that the will shows that testator intended the recipients of his bounty to be exonerated, and not that which he gave them. Such construction of the will would result in negation, for though a testator may do as he pleases with his own (due regard being had to the policy of the law), he may not control his legatees in the use of their legacies after the receipt thereof. As said before, his intention must be sought, and if that is legal, it is our duty to give it due force and effect.

Whether or not all parties interested in the payment of this annual sum of $2000 are before us need not now be decided. The rights of Orr S. Hubbard—who succeeds Elizabeth Eva Reiss—rise no higher than her's, for he, too, receives the money "in like manner," and if the spendthrift clause applies to her, he comes within the same category. "His heirs during their life" almost defies interpretation; possibly it attempts to create a perpetuity; if so, that cannot affect the prior life estates.

It is also claimed that this item of the will creates an annuity—a legal estate—and that prohibition of the right of alienation is against principles of public policy.

In argument, the gift has been treated as an annuity; in strictness, it is not such. "An annuity is a yearly payment of a certain sum of money granted to another in fee for life, or years, charging the person of the grantor only," quoted by Judge Penrose from Coke; see Bayard's Estate, 7 Dist. R. 279, 281; Warley's Estate, 22 Dist. R. 790, and cases therein cited.

Here, as we view the will, we have the ordinary case of a gift of certain sums at certain times to be paid by some one from the whole estate to a legatee, with right of succession by another legatee and with more or less vague rights in remaindermen, without the right of anticipation by the recipients and with no liability, so far as these stated sums are concerned, until and unless paid. There is no restriction on alienation, because the sums are not the legatees' unless and until they make them their own, that is, at the time fixed for receipt thereof.

We see no difference in principle, or in effect, where income of a specified sum is given without liability for debts; where an annual sum from income is so given, and where, as in the present case, the periodic gift may be of principal. In all these instances the purpose can be fulfilled only in event that some one other than the *cestui que trust*, or recipient of the benefit, is the disbursing and distributing agent.

In any and all of such cases the design of testator is frustrated if the court should uphold an agreement for an immediate and outright distribution where testator intended another and entirely different disposition.

Accordingly, all exceptions are dismissed, and the adjudication is confirmed absolutely.

Judge HENDERSON did not sit.